UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CRYSTAL V.,[1]                              )
                                           )
                    Plaintiff,             )
                                           )
            v.                             )        No. 1:25-cv-1288-MJD-JRS
                                           )
FRANK BISIGNANO,                           )
                                           )
                                           )
                    Defendant.             )

**ENTRY ON JUDICIAL REVIEW**

Claimant Crystal V. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382. For

the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.  Background**

Claimant applied for SSI in September 2022, alleging an onset of disability as of October

11, 2019.  [Dkt. 11-5 at 2.]  Claimant's application was denied initially and again upon

reconsideration, and a hearing was held before Administrative Law Judge Albert Velasquez

("ALJ") on May 30, 2024.  [Dkt. 11-2 at 45.]  On June 21, 2024, ALJ Velasquez issued his

determination that Claimant was not disabled.  *Id.* at 18.  The Appeals Council then denied

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Claimant's request for review on May 2, 2025.  *Id.* at 2.  Claimant timely filed her Complaint on June 27, 2025, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c.  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920(a)(4).  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).  If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872.  That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it.  See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025).  This is the standard the Court will apply in this case.

### III.  ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the application date of September 14, 2022.  [Dkt. 11-2 at 20.]  At step two, the ALJ found that Claimant had the following severe impairments:  "degenerative disease of the lumbar and cervical spine, dextroconvex scoliosis of the thoracic spine, fibromyalgia, and hypertension." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 23.  The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except that she is limited to lifting and carrying no more than 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 of 8 hours and sit for 6 of 8 hours. The claimant has no limitations with respect to climbing of stairs or ramps, no limitations with respect to balancing, stooping, and crouching, with occasional kneeling and crawling, with

no climbing of ropes, ladders, or scaffolds, no work at unprotected heights or around unprotected, dangerous moving equipment.

*Id.* at 24.

At step four, the ALJ found that Claimant was able to perform her past relevant work as a housekeeping cleaner during the relevant time period. *Id*. at 37. Alternatively, at step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 37-38. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 39.

### IV. Discussion

Claimant argues that the ALJ's assessment of her subjective symptoms allegations is erroneous and constitutes reversible error. For the reasons set forth below, the Court agrees.

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p at *3. The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. Here, the ALJ concluded:

4

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 11-2 at 27.]

The Court has scoured the ALJ's opinion for the promised explanation of the reasons for this finding by the ALJ. The ALJ provided a lengthy summary of the medical evidence of record but, unfortunately, nowhere does the ALJ explain why he believes the evidence he recites regarding Claimant's physical impairments is not consistent with Claimant's allegations regarding her symptoms. "A summary is not analysis." *See Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)).

In addition to summarizing the medical evidence, the ALJ notes that he "see[s] no evidence of significantly limiting side effects regarding [Claimant's] medications," while also noting that Claimant "reported that she experiences sleepiness and grogginess from Lyrica and nausea from Pristiq." [Dkt. 11-2 at 34.] The ALJ further notes Claimant's history of several surgeries and unsuccessful injections and physical therapy, and the fact that Claimant "stated that she was not taking medication for pain" at the time of the hearing. *Id.* Elsewhere in his decision, however, the ALJ noted that "[t]o manage her pain throughout the day, the claimant stated that she takes prescribed medication and uses ice and heat, although there are days that nothing helps and she has to lie in bed. She stated that she applies heat two times per day for fifteen to twenty minutes, although she uses ice more often, applying it three times per day for twenty minutes." [Dkt. 11-2 at 26-27.] That was, in fact, Claimant's testimony at the hearing; the Court is unable to locate any testimony that Claimant was not taking any medication for pain. And, in fact, a

5

medical record from February 22, 2024, a few months prior to the hearing, indicates that

Claimant was taking Flexeril and Lyrica, both of which are used to treat pain.  [Dkt. 11-7 at 398.]

> That leaves the ALJ's statements regarding Claimant's daily activities:

> In terms of other factors, the claimant reported taking her mother to her appointments and to the grocery store, with treatment notes indicating she is her mother's caretaker as her mother uses a wheelchair, and the claimant also reported taking care of chickens until a year prior to the hearing, which activities are work-like activities. The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with her level of activities of daily living.

[Dkt. 11-2 at 34-35] (citations omitted).  Earlier in his decision, the ALJ stated:

> Regarding the claimant's daily activities, the evidence as a whole demonstrates her limitations are less severe than she alleges.  Specifically, the claimant can manage her personal care and hygiene without reminders, manage her medications, take her mother to the store and to her appointments, take care of pets, and previously, until a year prior to the hearing, care for chickens, and she can drive, grocery shop, perform household chores such as preparing food, cleaning, and doing laundry in small batches, and she can mow using a riding mower in small sections.  Accordingly, I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residual functional capacity.

[Dkt. 11-2- at 28.]

The ALJ fails to explain how the limited activities he notes are inconsistent with

Claimant's subjective symptoms allegations.  *Cf. Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th

Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with

[the claimant's] description of her pain and limited mobility.  Nor is any inconsistency obvious,

so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any

exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D.

Ill. 2019) (same).  Nor does the ALJ explain how those activities, as Claimant performs them,

constitute evidence that Claimant could perform the type of full-time work of which the ALJ

found her capable.  As the Seventh Circuit has explained,

6

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).[2] Thus, the Seventh Circuit has held that "[w]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible." *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Bjornson*, 671 F.3d at 647). This holding is especially relevant here, where the Claimant testified that she takes her mother to appointments and the grocery store "[when] she can," [Dkt. 11-2 at 62], that her boyfriend mows all but a small section of the yard, *id.* at 63, and that she had to sell her chickens because she could no longer care for them, *id.* Further, in October 2022, shortly after the application date, both Claimant and her boyfriend reported on Function Report forms that he cleaned the chicken coop because Claimant was unable to. [Dkt. 11-6 at 32, 40.] Thus, while Claimant testified that she had chickens until about a year prior to the hearing, the only evidence of record is that at all relevant times Claimant's boyfriend performed the heavy labor of cleaning their coop, a fact that the ALJ acknowledged earlier in his

---

[2] The Commissioner suggests in his brief that the ALJ did not commit the error of equating Claimant's daily activities with the demands of full-time work. *See* [Dkt. 19 at 6] (asserting that the ALJ instead "discussed numerous activities of daily living that Plaintiff engaged in, in addition to her care for her mother and chicken coop and found that 'the evidence *as a whole* demonstrates her limitations are less severe than she alleges'") (emphasis added by Commissioner). This ignores the ALJ's plain language; he stated: "I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residual functional capacity."

decision.  It is unclear what other aspect of having a few chickens the ALJ equated to "work-like activities."  Similarly, the evidence of record is that Claimant's "caretaking" of her mother consisted of taking her to appointments and shopping when Claimant was able to do so.  That is hardly evidence that she could perform a full-time job.

The Commissioner properly notes in his brief that

> [t]he Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers* [*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)] (internal quotation marks and citation omitted).  A subjective symptom evaluation is "patently wrong" if it "lacks *any* explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (emphasis added).

[Dkt. 19 at 5.]  As set forth above, the ALJ's decision contains no explanation of why he concluded that the medical evidence of record was inconsistent with Claimant's subjective symptoms allegations.  The ALJ also improperly equated Claimant's minimal daily activities with the ability to work full-time.  Thus, the ALJ's subjective symptom evaluation is patently wrong, and remand is required.

## V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  25 JUN 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.